JS 44 (Rev.)

17-cv-1694

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
John Malone and Veronica Malone
Ahlese, LLC

**DEFENDANTS**
Howard and Wendy Weiss

17   1694

**(b)** County of Residence of First Listed Plaintiff   York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Essex County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Clifford E. Haines, Esquire   (p) 215-246-2200
Haines & Associates
The Widener Bldg- 5th FL. 1339 Chestnut Street, Phila., PA 19107

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander   ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine   ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   **PERSONAL PROPERTY**   ☒ 370 Other Fraud | **LABOR**   ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY**   ☐ 861 HIA (1395ff) | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice   ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty   **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1332
Brief description of cause:
Negligent and intentional misrepresentation; breach of contract and fraud

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ 800,000.00
- CHECK YES only if demanded in complaint:
  JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

APR 13 2017

DATE
04/13/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 07/16)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT          17      1694

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ~~XXXX~~ 140 Acorn Rd, Spring Grove, PA 17362

Address of Defendant: 40 Tower Rd, Livingston, NJ 07039

Place of Accident, Incident or Transaction: E. D. Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐   No☑

Does this case involve multidistrict litigation possibilities?          Yes☐   No☐

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes☐   No☑

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A  *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B.  *Diversity Jurisdiction Cases:*

1. ☑ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

---

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 4/13/17     *Andrew Bull*          APR 13 2017
                  Attorney-at-Law               Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/13/17     *Andrew Bull*          _____
                  Attorney-at-Law               Attorney I.D.#



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| John Malone and Veronica Malone.<br>Ahlese, LLC | CIVIL ACTION |
| v. | **17**   **1694** |
| Howard and Wendy Weiss | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                         ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| April 13, 2017 | Clifford E. Haines | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-246-2200 | 215-246-2211 | chaines@haines-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

APR 13 2017

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

HAINES & ASSOCIATES
By:     Clifford E. Haines, Esquire
The Widener Building – 5th Floor
1339 Chestnut Street
Philadelphia, PA 19103
Attorney ID No.: 09882
(P)     215-246-2200
(F)     215-246-2200
chaines@haines-law.com

*Attorneys for Plaintiffs*

17      1694

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Malone and Veronica Malone<br>140 Acorn Road<br>Spring Grove, Pennsylvania 17362 | : | No.: |
| | : | |
| and | : | |
| | : | |
| Ahlese, LLC<br>140 Acorn Road<br>Spring Grove, Pennsylvania 17362, | : | |
| | : | |
| *Plaintiffs* | : | |
| vs. | : | |
| | : | |
| Howard and Wendy Weiss<br>40 Tower Road<br>Livingston, New Jersey 07039, | : | ***Jury Trial Demanded*** |
| | : | |
| *Defendants*. | : | |

## COMPLAINT

Plaintiffs John Malone, Veronica Malone and Ahlese, LLC, by their undersigned attorneys, Haines & Associates, hereby submit this Complaint against defendants Howard and Wendy Weiss, and state as follows.

## NATURE OF THE ACTION

This action for negligent and intentional misrepresentation, breach of contract and fraud, arises out of the sale of a business, Second Opinion Inc. ("Second Opinion") by defendants

1

Howard and Wendy Weiss to Ahlese, LLC, a small limited liability company owned by the Malones. Second Opinion was owned by Mr. and Mrs. Weiss. It was presented to the Malones as a going concern actively engaged in connecting hundreds of lawyers to health care professionals who would serve as expert witnesses in medical malpractice and personal injury litigation.

In order to induce the Malones and Ahlese, LLC to purchase Second Opinion, Mr. and Mrs. Weiss made false representations about the nature of the business and the assets which would be received as part of the purchase. As a direct result of those misrepresentations, the Malones borrowed hundreds of thousands of dollars in order to purchase Second Opinion.

In selling Second Opinion to the Malones, Mr. and Mrs. Weiss agreed to sell, transfer to and deliver certain assets of the business, including intellectual property assets, such as the databases of Second Opinion's past and present attorney-clients; and the list of physicians and other medical professionals available to serve as experts to which Second Opinion would refer those clients. At the closing for the sale of the business, however, Mr. and Mrs. Weiss failed to turn over these assets to the Malones.

Instead, Mr. and Mrs. Weiss continued to withhold these assets under the pretext that the Malones need to first "learn" the business. The Weiss' continue to use the assets and maintain the business for themselves. Mr. and Mrs. Weiss engaged in an ongoing pattern of taking the business and money belonging to Second Opinion. Eventually, they turned over to the Malones numerous files for inactive matters, uncooperative clients and doctors who would not work with the Malones. Moreover, Mr. and Mrs. Weiss never produced to the Malones Second Opinion's client databases, its list of potential expert witnesses or the files for its active matters.

2

The Second Opinion business purchased by the Malones is now inoperable and valueless. Mr. and Mrs. Weiss converted to themselves all of the intellectual property previously held by Second Opinion and continued to misappropriate monies that should have been (and should now be) turned over to the Malones.

## PARTIES

1.  Plaintiffs John and Veronica Malone are husband and wife, individuals and citizens of the Commonwealth of Pennsylvania, residing at 140 Acord Road, Spring Grove, Pennsylvania 17362. On or about December 17, 2015, Mr. and Mrs. Malone purchased Second Opinion.

2.  Plaintiff Ahlese, LLC is a Pennsylvania limited liability corporation owned, operated and managed by John and Veronica Malone, with a business address of 140 Acorn Road, Spring Grove, Pennsylvania 17362. Ahlese, LLC served as the entity through which Mr. and Mrs. Malone purchased Second Opinion.

3.  Plaintiffs John Malone, Veronica Malone and Ahlese, LLC will be referred to in this Complaint collectively as "Plaintiffs," or the "Malones."

4.  Defendants Howard and Wendy Weiss are husband and wife, individuals and citizens of the State of New Jersey, residing at 40 Tower Road, Livingston, New Jersey 07039. Until the Malones purchased Second Opinion, Mr. and Mrs. Weiss ("Defendants") were the sole shareholders of the business.

## JURISDICTION AND VENUE

5.  The Court has subject matter jurisdiction over this action by virtue of the diversity of citizenship of the parties, pursuant to 28 U.S.C. §1332.

6.     Venue is proper in this judicial district, pursuant to 28 U.S.C. §1331(a), since some, if not all, of the events and acts which give rise to this action occurred within the Eastern District of Pennsylvania.

## FACTS

7.     In or about August 2015, the Malones, who were in search of a business to purchase and operate, contacted a business broker, Benjamin Ross Group, LLC ("Benjamin Ross").

8.     Located in Southampton, Pennsylvania, Benjamin Ross advertised itself as the most experienced broker and acquisitions firm in the Mid-Atlantic Region.

9.     Benjamin Ross, through its agent Michael Meyer, identified Second Opinion as a business that the Malones might be interested in purchasing. Mr. Meyer provided the Malones with information describing the nature of the business of Second Opinion.

10.     Second Opinion was described as a service business which connected lawyers representing personal injury plaintiffs to doctors and other medical professionals who would serve as expert witnesses for medical negligence and other kinds of personal injury cases.

11.     As a result of the information given to them by Benjamin Ross, the Malones were introduced to Defendants, the then-owners of Second Opinion.

12.     Defendants represented to the Malones that the business was an easy business to learn, one that could be operated from home, and one that could be run by people without any experience in the legal or medical field.

13.     During the Malones' due diligence, Defendants represented that Second Opinion had a client base of over 700 attorneys and over 1,000 medical professionals available to act as experts.

4

14. Defendants further represented to the Malones that Second Opinion had over 150 active client files at the time the business was being offered for sale.

15. Defendants additionally represented to the Malones that "Second Opinion" generated a monthly income of approximately $25,000.

16. In order to pay the purchase price for Second Opinion, the Malones had to obtain financing through a bank or lending institution.

17. Benjamin Ross connected the Malones with Centrix Bank in Doylestown, Pennsylvania, where they were able to secure a loan through the federal Small Business Administration.

18. As a result of the representations made to them by the Defendants, the Malones agreed to purchase Second Opinion for the sum of $770,000.00.

19. On or about December 17, 2015, the Malones attended a closing conducted at the offices of Benjamin Ross. At the closing, the documents purportedly necessary to consummate a transfer of ownership of Second Opinion to the Malones, including the Purchase Agreement, were signed. (*See* Purchase Agreement, attached hereto as Exhibit "A").

20. In exchange for the purchase price, Defendants agreed to sell, convey, transfer and deliver various assets of Second Opinion to the Malones. (*See* Purchase Agreement at ¶ 1).

21. Among the assets Defendants agreed to sell, convey, transfer and deliver to the Malones were goodwill and intellectual property assets. The intellectual property assets included, but were not limited to, Second Opinion's databases listing, and providing information about, its attorney-clients, and Second Opinion's list of doctors and other medical professionals who could be referred to Second Opinion's clients for use as medical experts. (*Id.*).

5

22. As part of the purchase of Second Opinion, among other things, Defendants agreed to provide the Malones with 24 weeks of training after the closing, to be provided at no charge. (*See* Purchase Agreement at ¶ 15).

23. As part of the purchase of Second Opinion, Defendants also agreed that, for two years following the closing, they would not, directly or indirectly, compete with the Malones or Second Opinion by engaging "in the expert witness and medical malpractice consulting services to attorneys business, within a radius of one thousand (1,000) miles of the location of the business being sold" (the "Non-Compete Clause"). (*See id.* at ¶ 14).

24. At the closing, the Malones requested that the Defendants turn over certain of Second Opinion's assets to them, including Second Opinion's lists of all attorney-clients and its list of doctors and other medical professionals that would potentially serve as experts for Second Opinion's clients.

25. Although the Malones were the lawful owners of Second Opinion, Defendants refused to turn over these Second Opinion assets. Instead, Defendants represented that the information would be delivered to the Malones when they began the training Defendants had agreed to provide.

26. When the training began, however, Defendants still refused to produce these assets to the Malones. At that time, Defendants represented that they would not do so until they thought the Malones were ready to receive the information.

27. Nonetheless, the Malones attempted to work with Defendants to learn more about operating the business of Second Opinion, and to transition the business to the Malones' full operation and control.

28.     Although the Malones were now the lawful owners of Second Opinion, during the training and thereafter, Defendants continued to operate the business of Second Opinion as their own, refusing repeated demands by the Malones to turn the business over to them.

29.     During the training and thereafter, Defendants shut-out, marginalized and excluded in all ways any interaction by the Malones with the attorney-clients who had utilized and were continuing to utilize, the business of Second Opinion.  The Defendants shut the Malones out from the very business the Malones had purchased.

30.     During the training and thereafter, Defendants used Second Opinion's intellectual property assets on their own behalf, and converted business directed to Second Opinion to themselves, having clients send new business to them and converting payments to themselves.

31.     On or about July 1, 2016, nearly seven months after the Malones' purchase of Second Opinion, Defendants purported to turn over some of the Second Opinion assets to the Malones, by delivering to the Malones, in Pennsylvania, a large quantity of medical records, which were supposedly related to cases being handled by Second Opinion.

32.     However, the records delivered by Defendants to the Malones related to closed, inactive or moribund matters which had no value.  Defendants never turned over Second Opinion's lists of attorney-clients and medical professionals, or Second Opinion's files for active matters, to the Malones.

33.     The Second Opinion business that the Malones purchased from the Defendants and attempted to operate became an inoperable business in the summer of 2016.

7

## COUNT I
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

34.     Plaintiffs hereby incorporate all the foregoing paragraphs of this Complaint, as if fully set forth herein.

35.     In their written prospectus, or information statement, describing the business of Second Opinion, Defendants represented the following:

> (a)     The business of Second Opinion was easy to learn;

> (b)     A new owner purchasing Second Opinion would not need any legal or medical background to operate the business; and

> (c)     The Second Opinion business could be run from any location.

36.     During the due diligence conducted by the Malones, Defendants made additional representations to the Malones, both verbally and in writing, concerning matters which included the following:

> (a)     the number of attorneys who utilized the services of Second Opinion;

> (b)     the number of doctors and health care professionals available to provide expert opinions for the attorney-clients of Second Opinion;

> (c)     the number of active cases being handled by Second Opinion; and

> (d)     the gross monthly revenues of Second Opinion.

37.     The representations identified above were affirmative statements by Defendants, which were untrue, and constitute negligent misrepresentation.

38.     The representations were made under circumstances in which the Defendants should have known of their falsity.

39.     Defendants intended the Malones to rely on these misrepresentations to induce them to purchase Second Opinion and pay Defendants $770,000 for that business.

8

40.     The Malones reasonably relied on some or all of these misrepresentations, which were material to their decision to enter into the Purchase Agreement to buy Second Opinion.

41.     As a direct and proximate result of their reliance on Defendants' misrepresentations, the Malones suffered injury, losing their entire investment in Second Opinion.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants on Count I of the Complaint, in the amount of their investment ($770,000), together with interest, costs, and any and all other damages recoverable under law.

## COUNT II
## FRAUDULENT INDUCEMENT
### (Against All Defendants)

42.     Plaintiffs hereby incorporate all the foregoing paragraphs of this Complaint, as if fully set forth herein.

43.     In their written prospectus or information statement describing the business of Second Opinion, Defendants represented the following:

(a)     The business of Second Opinion was easy to learn;

(b)     A new owner purchasing Second Opinion would not need any legal or medical background to operate the business; and

(c)     The Second Opinion business could be run from any location;

44.     During the due diligence conducted by the Malones, Defendants made additional representations to the Malones, concerning matters which included the following:

(a)     the number of attorneys who utilized the services of Second Opinion;

(b)     the number of doctors and health care professionals available to provide expert opinions for the attorney-clients of Second Opinion;

(c)     the number of active cases being handled by Second Opinion; and

9

(d)     the gross monthly revenues of Second Opinion.

45.     The representations identified above were affirmative statements by Defendants, which were material and untrue, and constitute fraudulent inducement to contract.

46.     When they made these misrepresentations, Defendants knew them to be untrue, or did not believe them to be true.

47.     Defendants intended the Malones to rely on these misrepresentations to induce them to purchase Second Opinion and pay Defendants $770,000 for that business.

48.     The Malones reasonably relied on some or all of these misrepresentations, which were material to their decision to enter into the Purchase Agreement to buy Second Opinion.

49.     As a direct and proximate result of their reliance on Defendants' misrepresentations, the Malones suffered injury, losing their entire investment in Second Opinion.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants on Count II of the Complaint, in the amount of their investment ($770,000), together with interest, costs, and any and all other damages recoverable under law.

## COUNT III
## BREACH OF CONTRACT
### (Against All Defendants)

50.     Plaintiffs hereby incorporate all foregoing paragraphs of this Complaint, as if fully set forth herein.

51.     On or about December 17, 2015, Defendants and the Malones executed the Purchase Agreement, which represented the terms of the contract between the parties for the purchase and sale of Second Opinion.

52.     The Purchase Agreement was predicated on principles of good faith and fair dealing between the parties.

53.     Among other things, the Purchase Agreement required that Defendants sell, convey, transfer and deliver the assets of Second Opinion to the Malones at the time of closing.

54.     Among the assets that the Purchase Agreement required Defendants to sell, convey, transfer and deliver to the Malones were all "goodwill, client data bases . . . [and] medical expert contacts . . . ." (*See* Purchase Agreement at ¶ 1).

55.     At closing, Defendants failed or refused to transfer or deliver the assets identified in paragraph 54 to the Malones.

56.     An important factor in the success of Second Opinion was its existing goodwill, in the form of the relationship that existed between owners of Second Opinion, their attorney-clients and their medical experts. Indeed, in allocating the purchase price, for income tax purposes, the Defendants and the Malones agreed that "Goodwill" made up $758,000 of the $770,000 purchase price. (*See* Purchase Agreement at para. 3).

57.     In breach of the Purchase Agreement, Defendants never transferred, or attempted to transfer, that goodwill or relationship to the Malones, in breach of the Purchase Agreement.

58.     Instead, during the training period and thereafter, Defendants continued to operate the business of Second Opinion as their own, and shut out, marginalized and excluded in all ways any interaction by the Malones with the attorney-clients who had utilized and were continuing to utilize the business of Second Opinion.

59.     Furthermore, Defendants also failed or refused to meet their obligations with respect to the Second Opinion client database and medical contacts assets identified in the Purchase Agreement. The client databases identified, and contained information concerning,

11

Second Opinion's attorney-clients, and the list of medical contacts identified doctors and other medical professionals that Second Opinion could consult and refer to its clients for use as experts.

60.     In breach of the Purchase Agreement, Defendants failed or refused to deliver to the Malones the Second Opinion assets identified in paragraph 54, above.  Indeed, Defendants never even turned over the files for active matters being handled by Second Opinion.

61.     By failing to transfer the goodwill and other assets of the Second Opinion business to the Malones, Defendants directly breached the Purchase Agreement.

62.     Furthermore, by their breaches, Defendants effectively prevented the Malones from obtaining the benefit of their bargain: the transfer of ownership, control and successful operation of Second Opinion to the Malones.

63.     Defendants' breaches of the Purchase Agreement caused injury to the Malones. Without Second Opinion's goodwill and intellectual property, the Malones were unable to operate Second Opinion successfully and they lost their investment.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants on Count III of the Complaint, in the amount of their investment ($770,000), together with interest, costs, and any and all other damages recoverable under law.

## COUNT IV
## BREACH OF NON-COMPETE CLAUSE
## (Against All Defendants)

64.     Plaintiffs hereby incorporate all foregoing paragraphs of this Complaint, as if fully set forth herein.

65.     The Purchase Agreement entered into by Defendants and the Malones contained a Non-Compete Clause. (*See* Purchase Agreement at ¶ 14).

12

66.     The Non-Compete Clause barred Defendants from directly or indirectly engaging in the same business as Second Opinion within 1,000 miles of Second Opinion's location, for two years after the closing, whether as owners, stockholders, managers, employees, or in any other capacity.

67.     By operating the Second Opinion Business as their own after the Plaintiffs' purchase and thereafter, and converting Second Opinion's intellectual property assets, Second Opinion's current and new business, and Second Opinion's income to their own personal use, Defendants violated the Non-Compete Clause.

68.     Furthermore, on information and belief, Defendants continued to this day to operate a business in New Jersey in competition with the Malones' purchased business, using the client base and medical professional resources which the Malones purchased but never received, again in violation of the Non-Compete Clause.

69.     The Malones have been injured as a direct result of Defendants' violations of the Non-Compete Clause.

70.     As a direct result of Defendants' violations, the Malones were deprived of substantial income and/or profits generated after the closing by Second Opinion, as well as income and/or profits that could have been generated by Second Opinion had Defendants not engaged in improper competition in breach of the Non-Compete Clause.

71.     Defendants should, therefore, be forced to account to the Malones for all income and/or profits Defendants have received since the closing of the sale of Second Opinion, from their pursuit of the business in which Second Opinion was engaged, both:

(a) through Second Opinion itself, during the time period during which Defendants provided training to the Malones; and

13

(b) through any other entity or concern, including, but not limited to entities or concerns owned by Defendants, in which they engaged in the same type of business.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants on Count IV of the Complaint, in an amount in excess of $150,000, together with interest, costs, and any and all other damages recoverable under law.

## COUNT V
## COMMON LAW FRAUD
### (Against All Defendants)

72.     Plaintiffs hereby incorporate all foregoing paragraphs of this Complaint, as if fully set forth herein.

73.     As part of the sale of Second Opinion, Defendants represented that they would deliver to the Malones certain intellectual property assets of Second Opinion, including the databases listing, and containing information about, its attorney-clients and Second Opinion's list of doctors and other medical professionals that could be referred to those attorney-clients as experts.

74.     Defendants failed to deliver these assets to the Malones on the day of closing. Instead, Defendants represented that they would deliver the assets to the Malones at the commencement of the free training which Defendants had promised to provide the Malones.

75.     On the first day of the training, the Malones requested that the Defendants deliver these assets to them. Defendants again failed to deliver the assets to the Malones, representing that they would deliver the assets when they believed the Malones were "ready."

76.     The Defendants never delivered these assets to the Malones.

77.     The representations by Defendants that they would deliver these Second Opinion assets to the Malones were material and untrue.

14

78.    Defendants made these representations to the Malones with knowledge of, or belief in, their falsity.

79.    Defendants intended that the Malones rely on these misrepresentations to induce them to act or not act.

80.    The Malones reasonably relied on the misrepresentations in purchasing Second Opinion from Defendants, and were directly harmed as a result.

81.    As a result of their reliance on Defendants' misrepresentations, the Malones suffered direct and immediate physical, emotional and mental anguish, as well as harm to their reputations and standing in the community. They also suffered financial injury, losing their investment in Second Opinion.

82.    Because the conduct of the Defendants was wanton, willful and outrageous, and undertaken with a reckless disregard for the rights of the Malones, the Malones are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs seek judgment in their favor and against the Defendants on Count V of the Complaint, in an amount in excess of $150,000, together with punitive damages, interest, costs, and any and all other damages recoverable under law.

Respectfully submitted:

HAINES & ASSOCIATES

/s/ Clifford E. Haines, Esquire
*Attorneys for Plaintiffs*

Date: April 13, 2017

15