IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MALONE, VERONICA MALONE and AHLESE, LLC | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 17-CV-1694 |
| HOWARD and WENDY WEISS | |
| Defendants. | |

**DEFENDANTS HOWARD AND WENDY WEISS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS III, IV, AND V OF PLAINTIFFS' COMPLAINT**

Pursuant to the Court's Policies and Procedures ¶ 4, General Motion Practice, Defendants Howard and Wendy Weiss ("the Weisses") respectfully submit their Reply Brief in further support of their Motion to Dismiss Counts III, IV, and V of Plaintiffs' Complaint.

**I.   Plaintiffs' Breach-of-Contract Claims Against the Weisses Should Be Dismissed.**

The Weisses moved to dismiss all breach-of-contract claims against them on the grounds that they, individually, are not parties to the Purchase Agreement between Second Opinion, Inc. and Ahlese, LLC.  Since Plaintiffs John and Veronica Malone ("the Malones"), individually, are also not parties to the Purchase Agreement, the Weisses sought dismissal of their contract claims on that additional and independent ground.

In their response, Plaintiffs repeatedly misrepresent the sale transaction embodied in the Purchase Agreement, ignore the express terms of the Agreement, and disregard a fundamental principal of corporate separateness, by which corporations are distinct entities from their

shareholders.  In the end, their arguments fail and their breach-of-contract claims should be dismissed.

> **A.    Plaintiffs' Contentions that the Purchase Agreement Is Meaningless if Not Enforceable against the Weisses Individually Have No Merit.**

Plaintiffs argue that the Purchase Agreement, including the restrictive covenant, would be meaningless if not enforceable against the Weisses individually because Plaintiffs would otherwise be obligated to sue their own company.  They also point to the Seller's obligations in the Purchase Agreement to train the Buyer and be available "via telephone" to argue that they must run personally to the Weisses since "[Second Opinion] cannot train itself [n]or can it be available to advise anyone 'via telephone.'"  (Plaintiffs' Mem. of Law in Opposition to Motion to Dismiss (ECF 9) ("Pl. Mem.") at pp. 8-9)

These arguments have no merit.  To begin with, they misrepresent the transaction embodied in the Purchase Agreement, which was for the sale of assets from Second Opinion, Inc.[1] to Ahlese, LLC, which now operates under a trade name of "Second Opinion."  (*See* Exhs. B - D to Defendants' Motion to Dismiss (ECF 5) ("MTD")).  Plaintiffs did not purchase and do now own any interest in Second Opinion, Inc.

Furthermore, all corporations act through their directors, officers, and controlling stockholders.  "If that fact alone rendered them personally liable, there would be no need to ever pierce the corporate veil. The fact that a corporate officer causes the corporation to breach a contract does not, without more, render the officer personally liable."  *S. Jersey Health System, Inc. v. Garofolo*, 2005 WL 3357659, at *5 (N.J. Super. App. Div. Dec. 12, 2005), citing *Zeiger v. Wilf*, 755 A.2d 608, 622-624 (N.J Super. App.Div.), certif. denied, 165 N.J. 676 (2000), disapproved on other grounds by *Lombardi v. Masso*, 25 A.3d 1080 (N.J. 2011).

---

[1] In their brief, Plaintiffs repeatedly and erroneously refer to Second Opinion, Inc. as "Second Opinion, LLC"

Although Plaintiffs argue that piercing corporate veil is "potentially available" in this case (Pl. Mem. at pp. 10-11), the Complaint contains no allegations whatsoever in support of this remedy. (*See* Defendants' Mem. of Law in Support of MTD at p. 8). Furthermore, as we explained in our opening brief, the mere allegations of fraud are not sufficient to state a claim for breach of contract against corporate stockholders. (*See id.*)

  **B.**  **Paragraph 20 of the Purchase Agreement Does Not Support a Breach-of-Contract Claim against the Weisses and Does Not Confer Any Rights in the Malones.**

Plaintiffs argue that Paragraph 20 of the Purchase Agreement expressly contemplates that the Agreement is enforceable against the Weisses. This argument is similarly without merit.

Paragraph 20 states as follows:

> **20.**  <u>**Enforceability**</u>
>
> This Agreement shall inure to the benefit of and be binding upon the parties hereto. Except as otherwise expressly provided for herein, this Agreement shall not inure to the benefit of, be enforceable by, or create any right or cause of action in any Person other than the parties hereto, including without limitation any representative of either Purchaser or Sellers.[2] [Exh. B to MTD]

Plaintiffs argue that the phrase "including without limitation any representative of either Purchaser or Seller" clarifies the word "parties" such that *any* representative of either Purchase or Seller can enforce the Agreement and be liable for its breach. This strained and unreasonable interpretation does not withstand scrutiny under New Jersey law.

When interpreting a provision of a contract, "courts should begin by examining the text of the disputed provision in the context of the overall document." *Red Roof Fran. LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 557 (D.N.J. 2013), aff'd sub nom. *Red Roof Fran., LLC v. Patel*, 564 Fed. Appx. 685 (3d Cir. 2014) (unpublished). "In that connection, courts

---

[2] The Agreement expressly states that there is only one Seller – Second Opinion, Inc. (Exh. B to MTD at p. 1). Accordingly, a reference to "Sellers" rather than a "Seller" in Paragraph 20 is clearly a typo.

3

interpret a contract according to its plain language by reading the document as a whole in a fair and commonsense manner so as to match the reasonable expectations of the parties." *Id*., quoting *Princeton Women's Ctr. v. Proselect Ins. Co*., 2011 WL 4901310, at * 5 (D.N.J. Oct. 14, 2011).

In affording Paragraph 20 a "fair and commonsense" reading in the context of the overall Agreement, it is evident that this Paragraph intended to **exclude** any third party beneficiaries, *i.e.* "any Persons other than the parties hereto." The "parties hereto" are described on page 1 of the Agreement as Second Opinion, Inc. and Ahlese. (Exh. B to MTD). Plaintiffs' interpretation, however, would **expand** the scope of beneficiaries to include any representative of either company. Under Plaintiffs' reasoning, any employee or agent of Second Opinion, Inc. or Ahlese could presumably sue individually for breach of the Agreement. Clearly, this is neither a fair nor a commonsense reading. The only reasonable interpretation of the clause is that it excludes *all* third party beneficiaries, "including without limitation any representative of either Purchaser or Seller."

Furthermore, even if the enforcement provision could conceivably be interpreted to include "any representative" as a person who can enforce the Agreement, it cannot be read to include "any representative" as a person who may be liable for its breach. Indeed, the first sentence in Paragraph 20 plainly states that the Agreement is binding only upon "the parties hereto," *i.e.* Second Opinion, Inc. and Ahlese.

Accordingly, Paragraph 20 does not support Plaintiffs' claims for breach of contract against the Weisses and does not confer any rights in the Malones.

**C.     The Weisses Are Not Individually Liable for Any Breach of the Restrictive Covenant.**

Plaintiffs also argue that they stated a claim against the Weisses individually because Paragraph 14 of the Purchase Agreement states that "[t]he Seller and its principals agrees [sic]" that the Seller will not engage in the same business purchased by the Buyer. (Exh. B to MTD at

¶ 14).  A reference to "principals" in Paragraph 14 does not help Plaintiffs because the Weisses are not parties to the Purchase Agreement and never signed it in their individual capacity.

A decision by the District Court in *Source One, USA, Inc. v. Challenge, Inc.*, 2009 WL 3464707, * 7-8 (E.D.Mich. Oct. 22, 2009) is instructive.  In that case, Source One and Challenge entered into a contract whereby Source One agreed to solicit opportunities for sale of Challenge's products.  Crosley, the sole shareholder and CEO of Challenge, signed the contract on behalf of Challenge.  The contract contemplated that in the event that Challenge were sold to a third party and the successor entity failed to make termination payments to Source One, "then Challenge *and or its principal owners* shall pay to Source One all post termination commissions due . . ." *Id.* at *2 (brackets omitted; emphasis added).  Challenge was subsequently sold to another company which refused to pay termination fees.  Source One asserted that Crosley breached the agreement by failing to pay Source One's termination fees once the purchaser refused to do so.  The District Court granted Crosley's motion to dismiss holding that "[d]espite [the] language [in the contract] which purports to obligate Crosley personally as Challenge's 'principal owner,' *Crossley never signed the Agreement in his individual capacity.*" *Id.* * 8 (emphasis in the original).

Similarly in this case, even if the restrictive covenant could be construed to purportedly obligate Seller's principals personally, Plaintiffs' claim still fails because the Weisses never signed the Purchase Agreement in their individual capacity. Indeed, Howard Weiss never signed the Agreement and Wendy Weiss signed it only as President of Second Opinion, Inc.  (Exh. B to MTD at p. 12).  Accordingly, Plaintiffs cannot state a claim for breach of the restrictive covenant against the Weisses.

**II.     Plaintiffs' Claim for Common Law Fraud Is Barred by the Gist of Action Doctrine.**

The Weisses also moved to dismiss Count V of the Complaint, a purported common law fraud claim, pursuant to the gist of action doctrine.

In response, Plaintiffs boldly contend that under Pennsylvania law, "the gist of action doctrine cannot be applied when fraud claims are made." (Def. Mem. at p. 14).  This is plainly wrong.   The very case cited by Plaintiffs in support of their assertion, *Mirizio v. Joseph*, 4 A.3d 1073 (Pa. Super. 2010), recognized that Pennsylvania courts "have **not** carved out a categorical exception for fraud" from the doctrine.  *Id*. at 1080, quoting *eToll, Inc. v. Elias/Savion Advertising, Inc*., 811 A.2d 10, 19 (Pa. Super. 2002) (emphasis in the original).  Rather, "the question [is] whether the fraud concerned the performance of contractual duties.  If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties," and therefore barred by the gist of action doctrine.  *Id*., quoting *eToll*.

As this Court recently held in *Wen v. Willis*, 117 F.Supp.3d 673 (E.D.Pa. 2015) (Beetlestone, J.), the gist of action doctrine bars not only claims for fraudulent performance but also claims for fraudulent inducement "predicated upon misrepresentations as to a party's intent to perform under a contract."  *Id*. at 681, quoting *Vives v. Rodriguez*, 849 F.Supp.2d 507, 520 (E.D.Pa. 2012).  In *Wen*, this Court granted a motion to dismiss fraud claims pursuant to the doctrine because "[e]ach of the Defendants' misrepresentations Wen claims induced him to enter into the [Agreement] was later incorporated into the [Agreement]."  *Id*. at 683.

The gist of Plaintiffs' fraud claim in Count V is that Defendants purportedly failed to deliver to them databases containing information about Second Opinion, Inc.'s attorney-clients and lists of medical experts. (Compl. at ¶ 73).  Plaintiffs contend that this claim sounds in fraud because the Weisses never intended to transfer anything to Plaintiffs.  A "breach of contract claim [however] cannot be 'bootstrapped' into a fraud claim merely by . . . alleging [that] the contracting

6

parties never intended to perform." *Galdieri v. Monsanto Co.*, 245 F.Supp.2d 636, 650 (E.D.Pa. 2002); *Wen*, 117 F.Supp.3d at 681; *Vives*, 849 F.Supp.2d at 520.

Any purported promise to deliver the alleged assets was incorporated in and therefore arises from the Purchase Agreement which expressly lists "client data bases [and] medical expert contacts" among the "business and property sold" to Ahlese. (Exh. B to MTD at ¶ 1). Plaintiffs themselves recognize that this duty is contractual as they allege that Defendants breached the Purchase Agreement when they purportedly "failed and refused to transfer or deliver" "client data bases . . . [and] medical expert contacts . . ." to Plaintiffs. (Compl. at ¶¶ 54-55).

Accordingly, Count V is nothing more than a contract claim in a "tort claim clothing" and therefore is barred by the gist of action doctrine.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' Motion to Dismiss and supporting Memorandum of Law, Defendants respectfully request that the Court dismiss Counts III, IV, and V of Plaintiffs' Complaint with prejudice.

Respectfully submitted,

/s/ Richard L. Bazelon
Richard L. Bazelon
Michael A. Shapiro
Bazelon Less & Feldman, P.C.
One South Broad St., Suite 1500
Philadelphia, PA 19107
(215) 568-1155
*Attorneys for Defendants*

Dated: July 31, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2017, I caused a true and correct copy of Defendants Howard and Wendy Weiss' Reply Brief in Support of Their Motion to Dismiss Counts III, IV, and V of Plaintiffs' Complaint to be served on all counsel of record via the Court's ECF system.

/s/ Michael A. Shapiro
Michael A. Shapiro