# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN MALONE AND VERONICA MALONE AND AHLESE, LLC,**<br>            **Plaintiffs,**<br><br>                        v.<br><br>**HOWARD WEISS AND WENDY WEISS,**<br>            **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 17-1694** |

## MEMORANDUM OPINION

On December 17, 2015, Plaintiff Ahlese, Inc. ("Ahlese") entered into an agreement to buy a New Jersey company, Second Opinion, Inc. ("Second Opinion"), a service business which connects lawyers representing personal injury plaintiffs to doctors and other medical professionals who would serve as expert witnesses. The Purchase Agreement was executed by Wendy Weiss, characterized in the signature block beneath her name as the "President" of Second Opinion (which was listed as the "seller") and by Veronica Malone on behalf of Ahlese (which was listed as the "purchaser"). Neither of the Defendants, Wendy and Howard Weiss, or the individual Defendants, Veronica and John Malone, signed the contract on their own behalf. Nevertheless, the case is brought against the individual Defendants, and not Second Opinion. Plaintiffs, Ahlese and its principals, John and Veronica Malone, allege various counts of fraud, misrepresentation, conversion, and breach of contract. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the contractual counts – for breach of contract and for breach of a non-compete clause, and claims for fraudulent inducement and conversion. For the reasons set forth below, Defendants' Motion to Dismiss shall be granted in part and denied in part.

I. **FACTS**

A little bit of procedural history is useful to understand the posture of Defendants' Motion. In their first Complaint, Plaintiffs asserted causes of action for breach of contract against the Defendants in their individual capacity. Defendants moved to dismiss because they had not signed the Purchase Agreement in their individual capacities. The Court dismissed the breach of contract claims against the Defendants because under New Jersey law, the law governing the Purchase Agreement, the Defendants were not liable on contract in their individual capacities. This Court also dismissed a claim for fraudulent inducement under the gist of the action doctrine because the Complaint did not allege a breach of any duties independent from those enshrined in the later contract.

Plaintiffs filed an Amended Complaint alleging two new counts of breach of contract under an alter-ego theory of liability.[1] In addition, Count Five alleges a claim for fraudulent inducement based on the non-compete clause. Plaintiffs allege that Defendants' representations about refraining from competing against Plaintiffs induced them to purchase Second Opinion even though Defendants had no intention to be bound by the non-compete clause in the Purchase Agreement. Count Six alleges a claim for conversion because Defendants continued to operate Second Opinion and receive income from its operations after Plaintiffs purchased the company. Defendants have, again, moved to dismiss the claims against them by arguing that the gist of the action doctrine precludes Counts Five and Six.

---

[1] The Court granted Plaintiffs' Motion to Amend their Complaint after receiving no response from Defendants within the time proscribed by the Federal Rules of Civil Procedure. *See* ECF No. 23. Defendants continue to assert in their Motion to Dismiss that they "notified the Court" of a stipulation for an extension and that the Court granted the motion "under the mistaken belief that defendants had not communicated with the Court." Counsel is incorrect. The Court did not and has not received any letter, purportedly delivered by hand, to chambers. Counsel is advised that any future communication must follow the Court's Policies and Procedures, specifically Rules I.G and VII.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). "In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" *Id.* (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "In other words, 'there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'" *Id.* (quoting *Phillips*, 515 F.3d at 234-35). That showing cannot be made through conclusions, but requires well-pled factual allegations. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). In determining the adequacy of those well-pled allegations to state a cause of action, the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

## III. DISCUSSION

### a. Plaintiffs' Veil-Piercing Claims Fail to State a Claim

Plaintiffs state two claims for breach of contract on a theory of alter-ego liability, elsewhere called piercing the corporate veil. As a preliminary matter, Defendants argue that Second Opinion is a necessary party under Rule 19 of the Federal Rules of Civil Procedure, and therefore the case was be dismissed without them. Rule 19 of the Federal Rules of Civil Procedure requires a court to consider four factors to determine whether a case should proceed in the absence of Second Opinion:

(1) The extent to which a judgment rendered in [Second Opinion's] absence might prejudice [Second Opinion] or the existing parties;

(2) The extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3) Whether a judgment rendered in the person's absence would be adequate; and

(4) Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder

Fed. R. Civ. P. 19(b). In this case, a judgment rendered in the absence of Second Opinion will not prejudice Second Opinion or any existing parties because Ahlese purchased Second Opinion and Ahlese is one of the plaintiffs. *See* Purchase Agreement at 1.[2] A judgment will not prejudice Defendants because Defendants were the sole owners of Second Opinion prior to the sale and Plaintiffs are the sole officers of Ahlese. *See* Exhibit A to Second Motion to Dismiss. For the same reasons, a judgment rendered in the absence of Second Opinion will be adequate as well. Unlike in *Abella v. Seven Seven Corp. Grp.*, the case upon which Defendants rely, Defendants will not have a claim

---

[2] When making a Rule 19 determination, a court may consider evidence outside of the pleadings. *See Jurimex Kommerz Transit G.m.b.H. v. Case Corp*, 201 F.R.D. 337, 340 (D. Del. 2001), *aff'd in relevant part*, 65 F. App'x 803 (3d Cir. 2003)

4

for setoff against Second Opinion or any other party if Plaintiffs are successful in piercing the corporate veil because all of the owners of Second Opinion before and after the purchase are parties to the present action. 2014 WL 220570 (D.N.J. 2014). Therefore, Second Opinion is not a necessary party and this action will not be dismissed under Rule 19 of the Federal Rules of Civil Procedure.

Turning to the merits of the Motion to Dismiss, the Court must examine the well-pleaded facts to determine if they state a claim for a breach of contract under a theory of alter-ego liability. *See Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014). "[A]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly,* such averments cannot support a veil-piercing claim." *Cent. Transp., LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 217 (E.D. Pa. 2012).

All of the allegations are merely conclusory recitations of the factors that courts consider in determining whether a corporate veil should be pierced. They are thus insufficient to state a claim under *Iqbal*. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009); s*ee also Essex Ins. Co. v. Miles,* 2010 WL 5069871, at *3 (E.D. Pa. 2010) (collecting cases in which courts dismiss veil-piercing claims where a plaintiff merely recites the elements courts consider).

Additionally, all of the allegations in Counts Three and Four, which allege that Defendants are the alter-ego of Second Opinion, are made on "information and belief." While the Third Circuit permits allegations based on "information and belief . . . where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge," it does not permit such averments where plaintiffs use merely "*boilerplate*

5

*and conclusory allegations*" as is the case here. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (emphasis in original) (internal quotations and citations omitted).

Plaintiffs' request for leave to file an amended complaint to state additional facts to support their claim to pierce the corporate veil will, however, be granted pursuant to Rule 15 of the Federal Rules of Civil Procedure which provides that leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15.

### A. Gist of the Action Doctrine Bars Fraudulent Inducement Claim

Defendants move to dismiss Plaintiff's fraudulent inducement claim pursuant to the gist of the action.

As a preliminary matter, it must be noted, that the law is not settled with respect to the scope of the doctrine as it applies to claims for fraudulent inducement. *Compare Williams v. Hilton Group PLC*, 93 F. App'x. 384, 386-87 (3d Cir. 2004) (dismissing fraudulent inducement claim based on "gist of the action" doctrine); *Wen v. Wills*, 117 F. Supp.3d 673, 682 (E.D. Pa. 2015) (same and recognizing split between federal and state courts); *Vives v. Rodriguez*, 849 F. Supp.2d 507, 516 (E.D. Pa. 2012) (same) *with Telwell v. Grandbridge Real Estate Capital LLC*, 143 A.3d 421 (Pa. Super. 2016) (refusing to dismiss fraudulent inducement claim based on "gist of the action" doctrine); *Mirizio v. Joseph,* 4 A.3d 1073 (Pa. Super. 2010) (same); *Sullivan v. Chartwell Inv. Partners, LLP*, 873 A.3d 710 (Pa. Super. 2005) (same). Accordingly, it is necessary to resort to first principles as follows.

A federal court sitting in diversity applies the substantive law of the forum state, which is Pennsylvania law in this case. *See, e.g.*, *Erie R.R. v. Tomkins*, 304 U.S. 64 (1938); *Clark v.*

*Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).[3] "When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source." *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). In the absence of specific guidance from the Pennsylvania Supreme Court, a federal court must "predict[] how the Pennsylvania Supreme Court would resolve the [issue]." *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citations omitted). In order to do so, a federal court "'must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue' among other sources." *Id.* (quoting *Spence*, 623 F.3d at 216). The rulings of state intermediate courts "must be accorded significant weight." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996), but they are ultimately "not binding on the federal court's authority." *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 333 (E.D. Pa. 2003).

In general, the gist of the action doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties without any separate or independent event giving rise to the tort." *Sköld v. Galderma Labs., L.P.*, 99 F.Supp.3d 585, 600 (E.D. Pa. 2015) (citations and internal quotation marks omitted). The Pennsylvania Supreme Court formally adopted the gist of the action doctrine in its 2014 decision in *Bruno v. Erie Ins. Co.* 106 A.3d 48 (Pa. 2014) and, in doing so, articulated the test to determine when a claim is barred by the gist of the action doctrine as follows:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is

---

[3] According to the Purchase Agreement, New Jersey law applies to the interpretation of the contract. However, the parties agree that Pennsylvania law applies to any tort claims such as fraudulent inducement or negligent misrepresentation arising out of the contract because, among other factors, Plaintiffs are located in Pennsylvania.

7

> imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68. Applying this "source of duty" test, the Supreme Court determined that the gist of the action doctrine did not bar plaintiff's claim for negligent performance under an insurance contract because society imposed a duty of care in performing under the contract.

But, the Supreme Court of Pennsylvania left several questions unanswered concerning the scope of the gist of the action doctrine. Most important among them, the Supreme Court of Pennsylvania did not clearly explain how to determine whether a claim concerns "a broader social duty" or a duty imposed by contract. This is particularly problematic in the context of a claim for fraudulent inducement because such claims inherently involve both a "social duty" to refrain from fraud as well as duties imposed by contract.[4]

In the wake of *Bruno* the Third Circuit has acknowledged the potential conflict between Pennsylvania Superior Court decisions and federal court decisions regarding the "gist of the action" doctrine, but ultimately declined to resolve the dispute. *See Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016).

Meanwhile, courts in the Eastern District of Pennsylvania have continued to apply the "gist of the action" doctrine to bar claims for fraudulent inducement based solely on a breach of the eventual contract. *See, e,g.*, *Holdings, Ltd. v. Apollo Metals, Ltd.*, 263 F. Supp. 3d 526, 531 (E.D. Pa. 2017) (Stengel, C.J.); *Wen,* 117 F. Supp. 3d at 681 (Beetlestone, J.). In *Wen*, which followed *Bruno*, this Court acknowledged recent Superior Court rulings which held that fraudulent inducement claims are not barred by the gist of the action doctrine. *See Wen*, 117 F. Supp. 3d at 682 (citing *Brickman Grp., Ltd v. CGU Ins. Co.*, 865 A.2d 918 (Pa. Super. 2004)).

---

[4] For a discussion of the questions left unanswered by the Pennsylvania Supreme Court after *Bruno*, see Lauren Anthony, *Home Is Where the Confusion Is: Pennsylvania Formally Adopts the "Gist of the Action" Doctrine and Builds A House for Ambiguity in Bruno v. Erie Insurance Co.*, 61 VILL. L. REV. 235 (2016).

However, this Court explained that it was "wiser to follow the guidance of *eToll* and the courts of our Circuit" because "even if we were torn between two competing yet sensible interpretations of Pennsylvania law . . . we should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." *Id.* (citing *Vives,* 849 F. Supp. 2d 522 (citations and internal quotations omitted). In addition, the Third Circuit has issued an opinion which, while non-precedential, does lend support to the conclusion that the gist of the action also precludes fraudulent inducement claims against an agent of a corporation even though the agent is not personally bound by the eventual contract, as is the case here. *See Williams*, 93 F. App'x. at 3887.

Permitting a fraudulent inducement claim in this case would essentially negate the entire doctrine of the gist of the action doctrine because a Plaintiff would have only to allege that Defendants never intended to abide by a provision in their contract in order to escape dismissal. Such is the case here. The only duty that defendants allegedly breached involved a breach of a duty enshrined in the Purchase Agreement – namely, the non-compete clause.

Therefore, Count Five will be dismissed with prejudice.

**B. Gist of the Action Doctrine does not bar Plaintiffs' Conversion Claim**

Plaintiffs also assert a claim for conversion against Defendants. Plaintiffs claim that Defendants wrongfully exercised dominion and control over payments received for services provided by Second Opinion after the parties entered the Purchase Agreement.

This Court explained the standard upon which to determine whether a conversion claim is barred by the gist of the action doctrine in *Wen.* 117 F. Supp.3d at 683. "Where a tortious claim for conversion is based solely on the failure to perform under a contract, it is barred by the gist of

the action doctrine." *Id.* (quoting *Vives*, 849 F. Supp. 2d at 516). This Court went on to explain that the gist of the action doctrine did not prohibit Wen's claims in that case:

> Were Wen's conversion claim based on the Defendants' failure to make distributions or other payments to him under the FFE Agreement, such a claim would be barred under the gist of the action doctrine. However, his principal allegation under this claim is that the Defendants 'intentionally converted Wen's $4 million to their own use. . . . Such an allegation precisely implicates the 'broader social dut[ies] owed to all individuals . . .' such as the prohibition against theft, which "exist[] regardless of contract.

*Id.* This scenario is also the case here. Plaintiffs do not allege that Defendants withheld payment under the Purchase Agreement. Rather, they allege that Defendants "received payments for services provided by Second Opinion after the closing but . . . kept some, or all, or those payments." Such claims are not barred by the gist of the action doctrine. Therefore, Count Six will not be dismissed.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

**Date: February 12, 2018**