IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MALONE AND VERONICA MALONE AND AHLESE, LLC,<br>Plaintiffs,<br><br>v.<br><br>HOWARD WEISS AND WENDY WEISS,<br>Defendants. | CIVIL ACTION<br><br><br><br>NO. 17-1694 |

**MEMORANDUM OPINION**

This case arises out of the sale of Second Opinion, Inc. ("Second Opinion"), a service business which connects lawyers representing personal injury plaintiffs to doctors and other medical professionals who would serve as expert witnesses. Plaintiff, Ahlese, LLC ("Ahlese") entered into an agreement to purchase the assets of Second Opinion (the "Purchase Agreement") on December 17, 2015. Plaintiffs, Ahlese and its principals, John and Veronica Malone, allege various counts of fraud, misrepresentation, and breach of contract against Defendants, Howard and Wendy Weiss, the prior owners of Second Opinion, in connection with the Purchase Agreement. Defendants move for sanctions against Plaintiffs for spoliation of evidence – which involves the manipulation and fabrication of e-mails.

I. **Background**

   a. *The Parties' Business Dealings*

The gist of Plaintiffs' Amended Complaint is that Defendants made false representations about the nature of the business and the assets which Plaintiff was to receive under the Purchase Agreement. Specifically, the allegations are that Defendants agreed – but failed – to deliver certain assets of the business, including intellectual property assets, databases of Second Opinion's past and present attorney-clients, and the list of physicians and other medical

professionals available to serve as experts to which Second Opinion would refer those clients. The Amended Complaint alleges that Defendants withheld these assets on the pretext that the Malones needed to first "learn" the business during specified training sessions. While the Malones trained with the Weisses, the Amended Complaint alleges that the Weisses "engaged in an ongoing pattern of taking the business and money belonging to Second Opinion," rendering the business "inoperable and valueless." The Defendants filed a counterclaim alleging that Plaintiffs "repeatedly asked Ms. Weiss to work on Second Opinion's cases after the closing and promised to compensate her for all her services" at a rate of $100 per hour – but did not.

### b. *Procedural History*

Plaintiffs filed this action on April 13, 2017. Defendants filed a motion to dismiss the claims against them, which the Court granted without prejudice to amend. Plaintiffs filed an Amended Complaint alleging four new fraud claims based on an alter-ego theory of liability, fraudulent inducement, and conversion. The Court dismissed the alter-ego and fraudulent inducement claims, but permitted the conversion claims to proceed. *See Malone v. Weiss*, 2018 WL 827433 (E.D. Pa. 2018).

In response to a letter request by Defendants, the Court held a hearing on the record on December 18, 2017 to decide a discovery dispute concerning, *inter alia*, whether Defendants' interrogatories contained an impermissible number of subparts. At the hearing, Defendants apprised the Court of a troubling situation of which they had recently become aware, namely, a series of discrepancies between emails produced by Defendants and emails produced by Plaintiffs. The Court suggested that the parties retain experts to examine the parties' respective computers.

Defendants subsequently filed a motion to compel inspection of the Plaintiffs' computer hard drives. On January 31, 2018, the Court held a conference call to address that motion as well as other discovery disputes. The Court dismissed Defendants' motion as moot because Mr. Malone had turned over his computer to Defendants for imaging and inspection and Plaintiffs had represented to the Defendants that they had only had one computer.

On March 15, 2018, Plaintiffs' counsel, Clifford Haines ("Haines") filed a motion to withdraw as attorney citing an "irretrievable breakdown of the attorney-client relationship between Haines and the Plaintiffs." On March 27, 2018, Defendants filed a motion for sanctions, which is the subject of the current dispute. The Court held a hearing on April 6, 2018 after which it denied Haines' motion to withdraw as counsel to Ahlese, but permitted Haines to withdraw as to the individual defendants (Mr. and Mrs. Malone). It also stayed all deadlines in this matter for 90 days to permit Plaintiffs to secure another attorney to represent them.

On June 29, 2018, the Court received a *pro se* fax from Plaintiffs. In pertinent part, the fax stated "I am writing to you to request the full dismissal of our civil suit against Wendy and Howard Weiss and any/all counter claims they have conceived of against us." The letter went on to state that the Defendants' "counter claim is only a distraction from the facts."

On July 5, 2018, the Court held a conference upon the record to discuss Defendants' pending motion for sanctions. During the conference, despite his June 29th letter asking for dismissal of the counterclaim, Mr. Malone represented to the Court that he had never heard of the counterclaim:

Court: There is a counter claim against you, right? So –

Mr. Malone: Mr. Haines has never shared any of this. Can you tell us what it is, please?

Court: You have to talk to your attorney, okay? . . .

At the conclusion of this hearing, the Court set a deadline for the Plaintiffs to respond to the motion for sanctions and scheduled a hearing to address the motion.

## II. Testimony

The hearing on the sanctions motion took place on July 24, 2018. Four witnesses testified, including Mr. Malone, Mrs. Weiss, Mr. Weiss, and Brian Halpin, an expert witness from Capsicum Group. The Hearing focused on four allegedly fabricated or altered emails and one altered contract as follows:

(1) D-29: Email from J. Malone to W. Weiss & H. Weiss, Friday December 19, 2015. The email contains a request for items such as Second Opinion's client files and marketing information, which Plaintiffs allege were not handed over until July of 2016. Defendants assert that they never received this email (hereinafter "Exhibit 1").

(2) D-32: Email from J. Malone to W. Weiss & H. Weiss, Thursday, January 28, 2016. The email contains the same list of requested items as the December 19, 2015 email, but the Defendants assert that neither did they receive this email (hereinafter "Exhibit 2").

(3) D-33: Email from J. Malone to W. Weiss & H. Weiss, Monday, February 8, 2016. This email contains content that is materially different from the email content produced by the Weiss' computer (hereinafter "Exhibit 3"). The version produced by the Weisses was referred to as D-33A and introduced as Exhibit 4 during the hearing on the motion for sanctions.

(4) D-34: Email from W. Weiss to J. Malone, dated Friday, March 25, 2016. This email allegedly shows a reply from Wendy Weiss demurring to Plaintiffs' request to transfer Second Opinion's files as soon as possible (hereinafter "Exhibit 5").

(5) D-37: Deferred Payment Agreement showing payments to Wendy Weiss at a rate of $75/hour. The Agreement produced by Wendy Weiss showed a rate of $100/hour (hereinafter "Exhibit 6"). The version produced by the Weisses was referred to as D-37A and introduced as Exhibit 7 during the hearing on the motion for sanctions.

It is undisputed that Exhibits 1, 2, 3, 5, and 6 were produced by Plaintiffs and that Exhibits 4 and 7 were produced by Defendants. The question raised by this motion is which of the emails is authentic.

4

### a. Testimony of Brian Halpin

Brian Halpin, who was qualified by the Court at the hearing as an expert in computer forensics, sought to determine which of the seven exhibits were authentic. He imaged Mr. Malone's computer and two computers from Mrs. and Mr. Weiss. He indexed the respective email accounts on each computer and, then, searched the email accounts for keywords, for emails sent on specific dates, and for emails from specific senders, among other searches. *See* Tr. Hrg. Sanctions, *Malone v. Weiss* 17-cv-1694, July 24, 2018 at 91 ("Sanctions Hrg."). He also searched the entire drive of each computer for evidence that the emails ever existed. *See id.* With respect to Exhibits 1, 2, 3, and 5, each of the allegedly fabricated emails, Halpin testified that all share a common attribute demonstrating that they could be inauthentic: the header of each email shows the text "mailto" preceding Plaintiff's email address. He continued that the presence of that text indicates that someone had to have used the reply or forward button to create the email. *See id.* at 95. While the "mailto" text does not necessarily indicate that the email was fabricated he testified that it "puts up a flag to me as an examiner that I should be looking at this very closely" presumably because the party would have the ability to edit the email. *Id.* at 96.

Based on his further examination, Halpin concluded that each of those emails was fabricated, altered, or never sent. With regard to Exhibit 1, Halpin testified that the email was altered and never sent. The date on the email purports to suggest it was sent on Friday December 19, 2015. However, December 19th, 2015 was a Saturday. *See id* at 97. Halpin testified that he could not find the email in Mr. Malone's sent box or in either of the Weisses' computers, indicating that it was, indeed, a fabricated email. *See id.* at 98. Halpin found a "PDF that looked like a compilation of emails related to this case," which he testified was created on December 20,

2017 according to Mr. Malone's metadata. *Id.* at 99. With regard to Exhibit 2, Halpin could not locate the email in Mr. Malone's sent file or the Weisses inbox. Halpin concluded that it would have been "impossible for [Exhibits 1 & 2] to have been sent" in the manner in which it was shown. *Id.* at 102.

According to Halpin's testimony, Exhibits 3 and 4 presented the most egregious example of fabrication. Exhibit 3 purported to be an email from Mr. Malone to the Weisses in which he stated "[w]e are interested in cutting off training. We are interested in taking over the business and moving it forward. We believe we can do this." Exhibit 4 purports to be an email sent at the exact same time as Exhibit 3 with all of the same text except it instead states "[w]e are ***not*** interested in cutting off training. We are interested in taking over the business and moving it forward ***while still learning***. We believe we can do this." In addition, Exhibit 3 states "[a]ny case what Wendy is working needs to be wrapped up, summarized, and sent to us so any time constraints that need to be met will be met" while Exhibit 4 states "[a]ny case that Wendy is working ***will remain with Wendy to complete*** so any time constraints that need to be met will be met." It is obvious that only one of these versions could be authentic.

Halpin testified that Exhibit 3, which came from Mr. Malone's computer, was a fabrication. *See id.* at 105. Halpin testified that he found Exhibit 4 on both Mr. Malone's computer and the Weisses computers, but Exhibit 3 was not found anywhere. *See id.* at 107. In perhaps the most telling indicia of purposeful fabrication, Halpin testified that he found Exhibit 4, the authentic email, in three locations on Mr. Malone's computer, including a backup file, unallocated space on the hard drive, and in a PDF file that had been deleted. *See id.* at 109. Halpin testified that the presence of this document in those three locations indicated that the document "was actually in a deleted state." *Id.* at 111. Halpin testified that he successfully

recovered the email from the deleted locations because the file was located in the "recycle bin." *Id.* As for the unallocated space, "if a file gets deleted and the directory entry for that file is also deleted . . . the file still exists on the hard drive until it's overwritten." *Id.* at 112. Thus, the presence of this email in each of the three locations in which it was found indicates that it was deleted. *See id.* at 112.

With regard to Exhibit 5, Halpin testified that the email was inauthentic. It purports to be an email from Mr. Malone to Ms. Weiss informing her that he was "expecting to pick up all active case files" and asking "when will you transfer our property to us." The purported answer from Ms. Weiss is that "it would take months for me to summarize all 150+ cases that [I am] working on before they can be sent to you." However, Halpin testified that the email was not found on the Weisses computer or in Mr. Malone's sent box which suggests that it was fabricated. *See id.* at 114.

Last, with regard to Exhibits 6 and 7, which purport to be unsigned deferred compensation agreements between the parties, Halpin testified that Exhibit 6 was never sent to or received by the Weisses, but Exhibit 7 was found in the inboxes of both of the Weisses computers. The two documents differ in that Exhibit 6 suggests that Ms. Weiss would be compensated at a rate of $75 per hour for her work on Second Opinion, but Exhibit 7 suggests her rate would be $100 per hour. Halpin testified that he was able to examine the metadata of the document from Mr. Malone's computer. From the metadata, he learned that Exhibit 7 had been sent to the Weisses on January 6, 2016 with the $100 figure. However, the same document was edited 41 days later with a single change: the $100 figure was changed to $75. *See id.* at 116-17. This later version was never sent to the Weisses, nor was it found in the sent box from Mr. Malone's computer.

7

Defendants did not proffer their own expert. Instead, Defendants relied almost entirely on the testimony of John Malone.

   b. *Testimony of John Malone*

John Malone provided a declaration and testimony to explain how the exhibits which are the subject of this motion came about. In relevant part, Mr. Malone explained that he preserved emails by hitting the reply button, copying and pasting the email into a Microsoft Word document, and then placing the document in a computer folder or making a hard copy of it. *See* Malone Decl. ¶ 15, Sanctions Hrg Tr. at 23. However, Mr. Malone explained that he sometimes deleted emails and that he sometimes did not follow this process. *See* Sanctions Hrg. Tr. at 23-25. He testified that he could not be sure which emails he deleted. *See id.* at 26 ("I've responded to plenty of emails, answered the question, and then deleted them."). Mr. Malone explained that he deleted emails so they would not slow his computer down. *See id.* at 31. He had a folder in his email devoted to the Weisses, but he stated that he was not sure when he created the folder and whether the folder contained all of the emails he received from the Weisses. He testified that he printed some emails and then scanned them to make a PDF and sent them to his attorney.

Next, Mr. Malone addressed each of the discrepancies in Exhibits 1 through 7. As to Exhibit 1, he testified that he copied and pasted the email to Microsoft Word, but apparently did not copy and paste the date correctly so he filled it in, albeit with a typo (he typed in "Friday" instead of "Saturday" for December 19, 2015). *See id.* at 39. Mr. Malone maintains that Exhibit 1 contains a list of documents he requested from the Weisses and that he sent that list at least a dozen times between December 2015 and July 2016 when Ms. Weiss finally turned them over. Mr. Malone called Exhibit 1 a "template" from which he sent multiple requests to Ms. Weiss. *Id.* at 35. His testimony as to Exhibits 2 and 5 was similar – namely, that he copied and pasted

8

the purported reply into a Microsoft word document. Mr. Malone also testified that he may have sent Exhibit 6, but he was not sure, though he testified at his deposition that he sent it. *See id.* at 67.

Mr. Malone's testimony as to Exhibits 3 and 4 was more confused. When asked whether he sent the email shown in Exhibit 3 which stated "we are interested in cutting off training," he said that it "[s]ounds like my email." *Id.* at 48. But when asked: "So then the Weisses are not telling the truth when they say the correct email is [Exhibit 4]?" he demurred, "[t]hat is not for me to judge." He then seemed to suggest that he did, in fact, send the email contained in Exhibit 3, which was materially different from Exhibit 4. *See id.* at 49. Mr. Malone's affidavit was equally equivocal as to the discrepancy. He stated that he "cannot account for the two inconsistent emails" and he is "no longer sure that I actually sent out (Exhibit 3), rather than the version found at (Exhibit 4)." Malone Decl. ¶ 31.

c. *Testimony of Howard and Wendy Weiss*

Both Howard and Wendy Weiss testified that they did not receive the Exhibits 1, 2, 3, or 5 emails or the Exhibit 6 contract. Instead, they testified that they only received the Exhibit 4 email and the Exhibit 7 contract. The Court finds no reason to discredit the Weisses testimony.

III. **Findings of Fact**

a. *Fabricated emails*

The testimony of Mr. Malone and the testimony of Mr. Halpin are entirely inconsistent on several points. The most glaring inconsistencies are as follows:

(1) Mr. Malone testified that he copied emails to Microsoft Word, but Mr. Halpin later testified that he "didn't find any Word documents on (Mr. Malone's) computer" that matched the emails contained in Exhibits 1, 2, 3, or 5.

(2) Mr. Malone testified that he would sometimes delete emails after he answered them, but this would not explain why Halpin found Exhibit 4, which was received by the

9

> Weisses, in deleted space on Mr. Malone's computer, but not in his sent box. This would have required Mr. Malone to copy and paste the unsent Exhibit 3, save it, send the email contained in Exhibit 4, and then go into his sent box and then delete the sent version of the email.

> (3) Mr. Malone testified that he received Exhibit 5 from Ms. Weiss, but Mr. Halpin could not find it anywhere on Ms. Weiss' computer or in Mr. Malone's inbox. The email itself contains a peculiar disclaimer unlike any of the other emails that Ms. Weiss sent to Mr. Malone.

> (4) Mr. Malone testified that he scanned the PDF document and sent them to his attorney for discovery, but Halpin testified that he found the PDF document, which was created on December 20, 2017, in deleted space. Importantly, December 20, 2017 was after the deposition at which Mr. Malone was presented with the fabricated emails.

> (5) Mr. Malone testified at his deposition that he sent Exhibit 6 to the Weisses, but metadata demonstrates that he sent Exhibit 7. Halpin testified that Exhibit 7 was not found on the Weisses computer.

There were many other inconsistencies with Mr. Malone's version of events. The Court finds Halpin's testimony credible. It was logical and supported by the evidence. Plaintiffs provided no reasonable basis to doubt Halpin's conclusions or his credentials.

The Court, however, finds Mr. Malone's testimony not credible. His testimony was confused and riddled with inconsistencies. First, when he was confronted with the authentic email, Exhibit 5, he accused the Weisses of having materially altered the email. *See* Dep. J. Malone, December 14, 2017 at 131 ("Your clients obviously modified my email before providing it to you."). Second, at the sanctions hearing, he testified that he copied and pasted his emails into Microsoft Word, but Halpin found no evidence of this practice. Third, he wrote a letter to the Court on June 29 requesting the dismissal of Defendants' counterclaim. And then in a subsequent hearing on July 5, 2018, he represented to the Court that he did not know about the counterclaim and that his attorney had not explained it to him.

10

### d. *Materiality*

Plaintiffs' principal factual argument during the hearing was that the alterations in the email were immaterial. For example, during the cross-examination of Mr. and Ms. Weiss, Plaintiffs established that the list of items requested in Exhibits 1 and 2 were all documents that the Plaintiffs were "entitled to have." Sanctions Hrg. Tr. at 160. Further, Ms. Weiss testified that the email contained in Exhibit 5, which purports to be from her stating that "it would take months for me to summarize all 150+ cases that I am working on," was generally accurate in that she had roughly 150 active cases at the time and that it would take several months to summarize them. *See id.* at 173. Last, in explaining the discrepancy between whether Mr. Malone wanted to continue training or not continue training, as stated in Exhibits 3 and 4 respectively, Mr. Weiss testified that the training was not a "condition of the sale" and that it was a "gratuity that" the Malones could "accept or reject." *Id.* at 162.

Nevertheless, the emails go to the heart of the case. The opening paragraphs of the Amended Complaint allege that the Weisses withheld property from the Malones under the pretense that they had to proceed with training. The material changes between Exhibits 3 and 4 demonstrate a concerted effort to bolster the Amended Complaint's allegations concerning training. While the fabricated email suggested that Mr. Malone wanted to end training, the real email indicated he wanted to continue training. While the fabricated email suggested Mr. Malone wanted Mrs. Weiss to end her work for Second Opinion, the real email suggested quite the opposite. This material change also goes to the heart of the counterclaim, which alleges that Mrs. Weiss was not paid for her work on Second Opinion after the closing. Further, the unsent requests for documents from Second Opinion in Exhibits 1 and 2 appear designed to bolster Plaintiffs' allegations that they requested those materials early. The entirely fabricated email

included in Exhibit 5 is particularly troubling because it purports to show Mrs. Weiss objecting to turning over Second Opinion's files, when that email never really existed. The materiality of Exhibit 5 is further bolstered because Plaintiff's quoted this language in their answers to interrogatories, which were served on February 2, 2018.

In light of the foregoing, the Court finds as facts as follows:

(1) Exhibits 1, 2 and 5 are inauthentic and fabricated in that they purport to be emails that were sent to the Weisses that were never actually sent.

(2) Exhibit 3 and 6 are manipulated documents in that they have been materially altered from the versions that were actually sent to the Weisses.

(3) The manipulations in Exhibits 3 and 6 are the result of an intentional effort to deceive the parties and the Court by Mr. Malone.

(4) Exhibits 4 and 7 are authentic.

(5) The deletion of Exhibits 4 and 7 from Mr. Malone's laptop was an intentional effort to conceal their existence.

(6) The purpose of the fabricated and deleted emails was to gain an advantage in the present litigation.

(7) The alterations between Exhibits 3 and 4 are material to the claims and counterclaims at issue in this case.

(8) The statements in Exhibits 1, 2, and 5 are material to the claims in this case.

(9) The alteration in compensation between Exhibits 6 and 7 are material to the counterclaim in this case.

With these facts in mind, the Court now turns to the standard and law governing a motion for sanctions.

### IV. Discussion

Defendants seek dismissal of Plaintiff's Amended Complaint as well as fees and costs for spoliation of evidence. Spoliation is defined as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence." *Black's Law Dictionary* 1531 (9th ed. 2009). Evidence

of spoliation may give rise to sanctions which include dismissal of a claim, suppression of evidence, an adverse inference, fines, and attorneys' fees and costs. *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp.2d 332, 335 (D.N.J. 2004) (collecting cases). The burden of proof to demonstrate spoliation lies with the party asserting that spoliation has taken place. *Culler v. Shinseki*, 2011 WL 3795009, at *3 (M.D. Pa. 2011).

As an initial matter, the parties disagree as to whether sanctions, if they are appropriate, would flow from the Court's inherent power to sanction or pursuant to rule 37 of the Federal Rules of Civil Procedure. In *Chambers v. NASCO, Inc.,* the Supreme Court held that federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process," 501 U.S. 32, 45 (1991), but cautioned that the power to sanction a party is limited to those cases where the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . ." *Id*. In contrast, Rule 37 provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . only upon finding the party acted with the intent to deprive another party of the information's use in the litigation may . . . dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e). The Rule, however, does not speak to the current dispute. The Rule, by its very terms, only applies when a party has "failed to take reasonable steps to preserve" electronically stored information and "it cannot be restored." The facts of this case are much more serious. We deal, here, with the intentional manipulation of emails and contracts in order to gain an advantage in litigation. Thus, the Court's inherent power to sanction is a more appropriate rubric to analyze this matter. *See Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2730748, at *5 n.3 (E.D.N.Y. 2010), *aff'd sub nom.*, *New York Credit & Fin. Mgmt.*

13

*Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (finding it more appropriate to impose sanctions under the Court's inherent power because "the misconduct at issue here is broader than a Rule 37 violation.").

The spoliation analysis requires a two-part inquiry. *See Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). First, the Court must determine whether spoliation occurred. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party." *Id.* Second, the Court must determine the appropriate sanction when spoliation occurs. In order to determine the appropriate sanction when a party fabricates evidence, the Third Circuit considers three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).[1]

    *i.    Whether spoliation occurred*

The evidence overwhelmingly demonstrates that spoliation occurred. First, Halpin testified that the fabricated emails were in Mr. Malone's control. They were located on his computer. Second, as explained above, the evidence was relevant to the claims or defenses. Third, the evidence demonstrates that there has been actual suppression or withholding of

---

[1] Elsewhere, the Third Circuit has stated that it is also appropriate to consider "a history of dilatoriness, whether the conduct of the party was willful or in bad faith [and] the meritoriousness of the claim or defense." *See Amfosakyi v. Frito Lay, Inc.*, 496 F. App'x 218, 225 (3d Cir. 2012). In this case, neither a history of dilatoriness nor the meritoriousness of the Plaintiffs' claims have been raised by the parties. As to the remaining factor, the Court determined that Mr. Malone's fabrications were willful. Therefore, to the extent that this factor applies, it weighs in favor of sanctions.

14

evidence. Halpin testified that Exhibit 4 was actively deleted from Mr. Malone's computer. Further, Halpin testified that Mr. Malone deleted files as late as December 20, 2017, which was after Mr. Malone testified at his deposition concerning the allegedly fabricated emails. Last, a duty to preserve the emails clearly attached, before December 20, 2017, when Mr. Malone deleted a PDF collection of his emails from his computer. Therefore, consistent with the plethora of cases finding spoliation where a party intentionally alters or deletes evidence, the Court finds that spoliation of evidence has occurred in this case. *See, e.g. Mosaid Techs,* 348 F. Supp. 2d at 336 (collecting cases). The remaining question is thus the appropriate sanction.

### ii. *Appropriate Sanction*

In order to determine the appropriate sanction, the Court weighs (1) the degree of fault of the party who altered or destroyed the evidence; (2) the prejudice suffered by the opposing party; and (3) the existence of alternative sanctions. *See Schmid*, 13 F.3d at 79.

#### a. *Degree of Fault*

Here, the evidence demonstrates that Mr. Malone intentionally altered and manipulated evidence. When confronted with the altered emails, he accused the Defendants of having manipulated the authentic emails. Mr. Malone actively deleted emails and the evidence shows that he continued to delete pertinent files as recently as December 20, 2017, after the deposition when he was presented with the fabricated emails. The discrepancies between the authentic and inauthentic emails included in Exhibits 3 or 4 lead to no other conclusion than Mr. Malone intentionally deleted the email contained in Exhibit 4 and saved a manipulated version.

Although Mr. Malone is most responsible for the fraudulent conduct, it is also appropriate to impose sanctions against the remaining Plaintiffs as well. Mr. Malone's co-plaintiffs are his wife and the corporation Ahlese. The corporation is closely-held by Mr. and

Mrs. Malone. *See Derzack v. Cty. of Allegheny, Pa*., 173 F.R.D. 400, 415 (W.D. Pa. 1996), *aff'd sub nom.*, *Derzack v. Cty. of Allegheny Children & Youth Servs*., 118 F.3d 1575 (3d Cir. 1997) (imposing sanctions on husband and wife in closely held corporation despite evidence that only the husband deleted emails). In cases involving closely held corporations, it is appropriate to impose sanctions on the corporation as well. *See Clientron Corp. v. Devot IT, Inc.*, 310 F.R.D. 262 (E.D. Pa. 2015) (imposing sanctions on corporation owned by husband and wife even though husband was the party at fault for fabricated emails); *Official Committee of Unsecured Creditors of Exeter Holdings Ltd. v. Haltman,* 2016 WL 128154, at *4 (E.D.N.Y. 2016) (imposing sanctions on all officers and the corporation when only one officer destroyed evidence). Of note is that Mrs. Malone was given an opportunity to testify and did not.

### b. Prejudice Suffered by Opposing Party

Notwithstanding the early discovery of the Plaintiffs' actions, the degree of prejudice in this case is substantial. Defendants were required to hire an expert witness and litigate a significant motion for sanctions, which took up an entire day of testimony. These types of costs and delays are sufficient to justify sanctions. *See Curtis T. Bedwell & Sons v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988).

But the costs of Plaintiffs charades were not limited to the present lawsuit. "[U]nscrupulous marauders . . . place at risk the very fundament of the judicial system [which] involves far more than injury to a single litigant. It is a *wrong* against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. . . ." *Perna v. Elec. Data Sys., Corp*., 916 F. Supp. 388, 397 (D.N.J. 1995) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238,

246 (1944)). Mr. Malone's actions threaten to undermine the public's faith in courts and the discovery process.

It is true that *some* of the fabricated emails did not contain *egregiously* false information. Exhibits 1 and 2 provided a list of documents that Defendants acknowledge Mr. Malone had a right to request under the Purchase Agreement. Exhibit 5 was accurate in that Ms. Weiss was working on 150 cases. But these exhibits gave the impression that the Weisses refused to hand over Second Opinion's files. Exhibit 5, for example, purports to be an email from Ms. Weiss that objected to handing over those files. That email was never sent. Moreover, Exhibit 3, which purported to show that Mr. Malone attempted to end training, was materially false in that the version Mr. Malone produced indicated he wanted to end training, while the version he actually sent to the Weisses indicated he did not. The training dispute is a central claim in this case and the fabricated emails made it look as if the Weisses inappropriately withheld Second Opinion's files while the Malones continued training. All of this is to say that the fabricated emails severely prejudiced the Defendants because they materially assisted Plaintiffs' case against them.

      *c. Alternative Sanctions*

This Court has contemplated various sanctions that it might impose on the Plaintiffs. An adverse jury inference, for example, would not remedy the prejudice that Defendants experienced in litigating the present motion. It would not deter this kind of behavior and it would be a minimal sanction given the time, effort and costs imposed on the process. Monetary costs and fines would also be inappropriate. In the fraud context, where a party resorts to fabricated evidence in order to bolster their claims, monetary costs and fines would "be conveying a message to litigants that money could cure one's improper acts." *Perna*, 916 F.

Supp. at 400. Monetary costs and fines would not be enough and there is no guarantee that Plaintiffs would pay. *See Derzack*, 173 F.R.D. at 417.

The only available remedy proportional to the deleterious conduct involved in this matter is outright dismissal of Plaintiffs' claims. A party's resort to fabricated evidence justifies denial of all relief to that party. *See Hazel-Atlas Glass Co.*, 322 U.S. 238 (1944). And, the Third Circuit has, on multiple occasions, made it clear that federal courts have inherent authority to dismiss claims asserted by litigants who have fabricated or altered evidence. *See, e.g. Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994 ("[W]e have noted that a district court may dismiss a suit outright in response to litigation abuses."); *Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) ("In the event that a party undertakes spoilage, the sanctions available to a court include dismissal of the relevant claim. . ."); *Amfosakyi*, 496 F. App'x 218, 225 (3d Cir. 2012) (affirming dismissal of claim as a sanction for spoilage). In this context, it is appropriate to dismiss Plaintiffs' claims as a sanction for spoliation of evidence.[2]

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

**DATE : August 1, 2018**

---

[2] Defendants also seek attorney's fees and costs in litigating the present Motion for Sanctions. While a district court has inherent authority to impose such fees, doing so would be inappropriate in this case as dismissal of Plaintiffs' claims is punishment enough under the circumstances.