IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MALONE, et al | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HOWARD WEISS, et al | : | NO. 17-cv-01694-RAL |
| Defendants. | : | |

**RICHARD A. LLORET**                                                                 **March 6, 2019**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

The Defendants, Howard and Wendy Weiss (collectively, the "Weisses"), who are also Plaintiffs on the counterclaim, have filed a motion to enforce a settlement. Doc. Nos. 87 (motion) and 94 (amended motion). The Plaintiffs, John Malone, Veronica Malone, and AHLESE, LLC (collectively, the "Malones") oppose the motion and contend there was no meeting of the minds. Doc. 91. For reasons explained below, I find that there was a settlement agreement and that it should be enforced.[1]

The parties engaged in a lengthy settlement conference on their first day of trial. Tr. 4, 31. At the end of the conference they dictated and initialed a term sheet. Doc. No. 94 at 2.[2] All present told me that they had settled the case. Doc. No. 94 at 51 (Weisses' Amended Memorandum); Doc. No. 91 at 4 (Malones' Answer to Motion, ¶¶ 8-9);[3] Tr. at

---

[1] The parties have consented to my jurisdiction, as a Magistrate Judge, to dispose of this matter, under 28 U.S.C. § 636(c). *See* Transcript of Oral Argument on 12/12/18 ("Tr.") at 14-15; Doc. No. 95.
[2] Given the multiplicity of documents and pagination, for consistency all page references to items contained in the docket are to the docket number and page number assigned by ECF.
[3] It is my custom, when a settlement is not memorialized on the record, to repeat the terms supplied to me to each of the parties and their counsel, gathered together, and to ask each person present if this is his or her understanding of the agreement to settle. When all state that this is so, I declare the matter settled. I followed this procedure in this case. The following passage, taken from the Weisses' memorandum, accurately reflects this process:
    Judge Lloret read the Settlement Agreement aloud to the parties and their counsel, and then separately asked each party, and each attorney, whether he/she/agreed to this settlement, and

26-27. In the days that followed, a dispute arose over the terms of the settlement. Doc. No. 94 at 46-48 (email exchange). The Malones claim that the parties implicitly agreed to execute mutual releases. Doc. No. 91 at 16. The Malones claim that this was certainly their intent, and that in the absence of such releases there was no meeting of the minds. *Id.* at 6. The Weisses contend that there was a meeting of the minds, made manifest by a handwritten sheet prepared at the end of the settlement conference, and that there was no agreement to exchange mutual releases. Doc. No. 94 at 52. The Weisses point out that releases are not a *sine qua non* of an enforceable settlement agreement. *Id.* at 55.

I find that the parties came to a meeting of the minds about the terms of settlement. The best evidence of that meeting of the minds is the handwritten sheet initialed by counsel and the parties at the end of the settlement conference. Doc. No. 94 at 2. At the end of the conference, after the parties indicated they had reached a settlement, and initialed the handwritten sheet, I read aloud the written terms evidenced by the handwritten sheet. After doing so, I asked each person present – attorneys and clients alike – whether the matter was settled on these terms. The parties and their attorneys responded individually to my questions by stating that the matter was settled. As part of that handwritten sheet and verbal acknowledgment, the parties did not mention or agree to mutual, general releases. The absence of releases does not vitiate a settlement agreement. *Good v. Pennsylvania R.R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967) (the absence of a release did not vitiate the settlement agreement).

---

received a positive response from each party and each attorney. Each party and each attorney then initialed the Settlement Agreement; the stated purpose of the initialing of the Settlement Agreement was to assure that there would be no dispute that all parties had agreed to the settlement of the case on the terms set forth in the Agreement.

Doc. No. 94 at 54-55.

I find that there was a settlement, rather than a withdrawal or a termination by way of adverse adjudication. Both parties conceded – as they must – that there was no final adjudication: if this transaction was anything at all, it was a settlement. Tr. at 26, line 12 (Weisses' counsel); 29, line 22 (Malones' counsel). In defining the end of the case as a settlement, it is useful to compare it with other means of resolving litigation. There was no "unbidden abandonment" of a claim. *Hyldahl v. Denlinger*, 661 F. App'x. 167, 171 (3d Cir. 2016) (not precedential) ("A voluntary withdrawal of civil proceedings does not constitute a favorable termination unless the withdrawal was 'tantamount to the unbidden abandonment of a claim brought in bad faith.' *Majorsky v. Douglas*, 58 A.3d 1250, 1270 (Pa. Super. Ct. 2012)"). Neither was liability "legally determined"; there was no final adjudication of the case. *Electronic Laboratory Supply Co. v. Cullen*, 712 A.2d 304, 311 (Pa.Super. 1998) ("both parties agreed to settle the case; under such circumstances, ELSCO's liability was never legally determined.").

In this case the terms of the settlement were the result of a lengthy and difficult negotiation conducted by the parties with the aid of their experienced counsel. The result was a compromise agreement, in the truest sense of that phrase: both parties gave up valuable rights; neither party got all it wanted. Tr. at 32, lines 1-11 (Weisses' counsel); 32, line 12 to 33, line 8 (Malones' counsel). This result was not a product of decision or adjudication imposed by a neutral, *e.g.*, a jury or judge. There was a provision for contingent entry of judgment against two, but not all, of the counterclaim Defendants (John Malone and AHLESE, LLC) as a means of securing the payment of a settlement amount, but a mechanism for early satisfaction of the judgment at half of its full value was agreed upon, which was one of the most important points of the settlement

agreement. It was a negotiated compromise of the parties' dispute, which is the essence of a settlement agreement.

There is a strong policy in favor of enforcing settlement agreements. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (there is a "strong presumption in favor of voluntary settlement agreements") (citing to *Pennwalt Corp. v. Plough,* 676 F.2d 77, 79–80 (3d Cir. 1982)). Litigation absorbs enormous amounts of the public's time and money, both of which could be spent on more productive endeavors. When the parties give clear evidence of having agreed to settle their dispute, courts are loath to overturn the agreement.

Counsel for the Malones argued that without a general release the litigation would not truly be resolved but would simply transmogrify into a "Dragonetti Act" claim against the Malones. Tr. at 20, 22. I find that this is an incorrect reading of the law. Because the Weisses settled the case, a Dragonetti claim is forbidden. The courts of Pennsylvania have been clear about this:

> As we held in *Cullen,* where the parties to the underlying suit agree jointly to end the underlying suit in a non-litigious nature, the liability of the underlying defendant, *i.e.,* the plaintiff in the wrongful use of civil proceedings suit, is never determined with finality. *Cullen,* 712 A.2d at 311. Therefore, the underlying suit is not a "favorable termination" within the meaning of 42 Pa.C.S.A. § 8351. *Id.,* 712 A.2d at 311.

*D'Elia v. Folino*, 933 A.2d 117, 122-23 (Pa. Super. 2007); *see Hyldahl*, 661 F. App'x. at 172 ("the FINRA case was not terminated in Hyldahl's favor as a matter of law, and the District Court did not err in granting summary judgment on his Dragonetti claim.").

I find that the case was settled under the terms evidenced by the handwritten sheet initialed at the end of the settlement conference. As part of my conclusion, I also find that any Dragonetti claim that could have been brought by the Weisses was

4

extinguished by their entry into a settlement, as opposed to other means of ending litigation. Liability was never determined with finality. *See D'Elia*, 933 A.2d at 122-23. Neither was the settlement an "unbidden abandonment" of the Plaintiffs' claims. *See Hyldahl*, 661 F. App'x. at 171 (not precedential). My conclusion that this case was settled, and not terminated in favor of the Weisses, is dispositive of both the Weisses' motion to enforce and the Malones' concerns about a future Dragonetti claim. An appropriate Order enforcing the settlement will follow. I will retain jurisdiction in order to oversee the conclusion of the settlement.

                                           **BY THE COURT:**

                                           *s/Richard A. Lloret*
                                           **RICHARD A. LLORET**
                                           **U.S. DISTRICT JUDGE**